December 26, 2022

<u>**VIA PRO SE INTAKE**</u>
Hon. Sarah Netburn, U.S.M.J.
United States District Court
Thurgood Marshall Courthouse
40 Foley Square, Room 430
New York, NY 10007

Re: *Arthur Balder v. Susan Sarandon, et al*, Case No.: 1:22-cv-06401-JLR-SN

**Hon. Judge Netburn:**

I am the Plaintiff in this action. This letter is submitted pursuant to I.A of your Honour's Individual Practices to request permission to file a Third Amended Complaint.

Contacts with NYLAG that have come to happen just last week because of the shortage of attorneys due to the Christmas season break, have pointed out to the fact that Attorneys of the Defendants did not contact us "to discuss throughly, in person or by telephone, the substance of the contemplated motion and any potential resolution." Since they have filed a motion pursuant to Fed. R. Civ. P. 12(b), the Plaintiff have been deprived of the right to indicate if he wished to amend the subject pleasing. This only represent a litigating disadvantage for the Plaintiff. Emails exchanged with Sarah Matz show that the Plaintiff suggested to move on to discovery in August 2022, but Sarah Matz stated "sorry but my client has the right to file a Motion to Dismiss", yet she did not elaborate, and she did not conferred on this matter. Even for the Plaintiff, a neophyte in legal matters, it felt strange that she could go ahead on a MTD when the preponderance of evidence sustain the Plaintiff's claims is overwhelming. Of course, Sarah Math wished a Complaint as short as possible.

The Motion to Dismiss [MTD] filed, besides confounding and pretending some allegations were not made in the Second Amended Complaint, relying in their faith that the Court will oversee them, also argues that the Plaintiff failed to allege. The FAC [First Amended Complaint] was longer because it contained necessary allegations and details, including not only the email presented by Sarah Matz now as an Exhibit of her MTD papers, and sent from Plaintiff to Defendant Sarandon, but also a clear and detailed explanation with exhibits that shows what had happened <u>*before* that email was sent and the emails sent by Sarandon before</u>, which was a response to Sarandon's unprofessional and disrespectful conduct and her sudden promissory estoppel for no other reason than the Plaintiff trying to address her unjustified distancing and, specially, her wildly unprofessional lack of thankfulness for the Parajanov-Vartanov Award, at least privately thanking the team that had treated her with silken gloves for years since 2016. The Plaintiff

stood on principle, and as a recompense was asked to "cancel the film festival circuit."

Additionally, the FAC contained more detailed allegations as regards to important areas, such as chronological description of the facts, and not "conclusory and self-serving" allegations, supported by written evidence sent by the Defendants. All this material was simplified because the Court deemed the First Amended Complaint too long, yet now the fact that it was shortened is being used against the Plaintiff. For instance, on page 2 of the Memorandum of Law, attorneys state:

> *"In a series of self-serving, conclusory allegations Plaintiff also alleges that Shara "coerced" the Plaintiff to accept disadvantageous terms and said if the Plaintiff did not agree to certain terms he would "scrap the project." Id. ¶9.*

The Plaintiff states that he was coerced because he can prove it, and states that *"if the Plaintiff did not agree to certain terms he [David Shara] would "scrap the project"* **simply because there is written evidence sent by David Shara to the Plaintiff, not because the Plaintiff anticipates and reads the mind of David Shara**. The fact that those exhibits were not included is a consequence of the petition of the Court to shorten the Complaint. Recall that the Court struck the First Amended Complaint because Sarah Matz insisted on the FAC being long and burdensome for her office's workload.

Another clear example of how this petition of the Court to shorten the FAC is being used against the Plaintiff is clearly identifiable here. In the MTD, attorneys state on page15, footnote number 14: "

> *The one potential contract Plaintiff identifies i.e., that MAF was ready to take the Film to "all sorts of distribution channels" (SAC ¶44), is conclusory and insufficient as Plaintiff has failed to plead facts to support that the opportunity was real and failed to plead but for causation. Moreover, it was not a breach for Shara to withhold consent for distribution. See Point I(A) supra."*

There were more than one potential contract. As regards to MAF, the allegations of Plaintiff are not conclusory: there are several email conversations between the Plaintiff and MAF's different teams, spanning months, with MAF's attorneys drafting the terms and conditions of the distribution, the preparation of a draft contract, they even send a contract draft, and David Shara is informed contemporarily of this events. The opportunity was *real, as in all other cases*. The Plaintiff, as in all other areas, negotiated to obtain the best terms possible for the distribution. David Shara knew that offer and others existed, he knew even when it generated, there is poof f it, how it evolved, and the contract finally cannot be signed because, in spite of all that, and in spite of his promises, David Shara does

not show the guarantees he had made responsible himself to obtain in order to bring those distribution opportunities to fruition. And there were more specific, clear, unambiguous business opportunities for distribution that were lost in similar circumstances and for the same reason. Should all of them have been described in detail, referencing long email conversations in the SAC? Or was it a situation to test in Discovery?

These are just two examples, and there are more, of the situation we are facing with the MTD filed by the attorneys of the Defendants.

Another similar situation appears in the events between 2020 and 2022. The Plaintiff did not provide proof, evidence, of Honey Shara directly making decisions and demands to the Plaintiff, how Honey Shara makes decisions in 2019 but also in 2020 and 2021, when an attorney appears and sends a letter *explicitly representing Honey Shara* and David Shara. The written statements sent by that attorney to the Plaintiff are unambiguously in the name of David Shara *and* Honey Shara. Honey Shara on multiple occasions states the money 'she' had invested in the film, and thus she feels she has the right to interfere, to make demands, to make decisions, and thus she is not 'an agent' that has nothing to do with the consequences of her decisions, she is someone making decisions in self-interest, and the actual situation is thus a consequence of her decisions, also, an her liability must be ascertained. Should I have presented the letter sent by that attorney, the emails sent by that attorney, the emails showing Honey Shara communicating decisions and making demands, in the SAC? Apparently no, because I was requested to present an outline of allegations, but going into those details now would have erased the possibility of such denials as those described before being present in the MTD, but the SAC would have been *much* longer.

Conclusively: the MTD relies in parts that are sketched in the SAC [Second Amended Complaint] but fully present, although perhaps in poor order, in the FAC.

It was the Plaintiff understanding that the details would be clarified in Discovery, but now we have a MTD based precisely in the aim at conciseness that the Defendants' attorneys requested in light of the FAC's extension, and that the Court granted.

Thus Plaintiff request the Court to allow a Third Amended Complaint and a deadline to file it. The Plaintiff will be able to file it no later than January 26, 2023.

The Plaintiff also has to include claims for Defamation against all three Defendants, and specially Tsitoghdzhyan and David Shara, for promoting to the public, even themselves, in person, in TV apparitions in some media in 2018, that the film would be distributed, and all at the expense of the Plaintiff's professional reputation, when in fact, none of them had any intention to allow its distribution.

The Plaintiff has also to include claims for Copyright infringement against Sarandon, for making use of certain parts of a script, '16 Hours', written and

copyrighted by the Plaintiff in 2018, in a film, 'Viper Club', and also for copyright infringement against Tsitoghdzyan for making use during years on his official website of a text written and copyrighted by the Plaintiff, even displaying publicly on his official website that he was the copyright owner, something utterly false because the Plaintiff has the Copyright number and certificate.

THEREFORE the Plaintiff requests to file a Third Amended Complaint that, following the advice and rules suggested before, will address this situation as it deserves. These proceedings are taking place for a just evaluation of the facts.

We greatly appreciate your Honour's time and consideration in this matter.

Respectfully Submitted,

/s/ Arthur Balder

Cc. All other Parties (via ECF).