# EXHIBIT 2

Memorandum of Law in Support of Motion to Dismiss

Docket Nr. 52 filed by Defendants on 12/05/2022

as answer to Second Amended Complaint.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X-------------------------------------------------------X

ARTHUR BALDER,                                    Case No.: 1:22-cv-060401-JLR-SN

                        Plaintiff,

            v.


SUSAN SARANDON; DAVID SHARA;
HONEY SHARA; TIGRAN TSITOGHDZYAN,

                        Defendants.
X-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**ADELMAN MATZ P.C.**
**1173A Second Avenue, Suite 153**
**New York, New York 10065**
**Phone: (646) 650-2207**
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

STATEMENT OF FACTS .................................................................................................. 1

STANDARD OF REVIEW ................................................................................................. 3

I.  PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE A BREACH OF CONTRACT
    CLAIM AGAINST SHARA............................................................................................ 4

    A.      Plaintiff Failed to Plead Conduct that Allegedly Breaches the Producer's
    Agreement……………………………………………………………………………..4

    B.      Alleged Discussions Outside the Producer's Agreement are not Enforceable ....... 9

            1.      The Alleged Oral Agreement is Barred by the Statute of Frauds .............. 9

            2.      Allegations of Prior Conversations are also Barred by the Parole Evidence
            Rule…………………………………………………………………………11

            3.      Alleged Discussions About the Two Future Potential Projects are Not
            Enforceable……………………………………………………………………12

II. PLAINTIFF HAS ALSO FAILED TO SUFFICIENTLY ALLEGE CLAIMS FOR
    TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS
    AGAINST SARANDON, HONEY SHARA AND TSITOGHDZYAN .............................. 12

    A.      Plaintiff has Failed to Plausibly Allege Breach of an Identified Agreement........ 13

            1.      Plaintiff Failed to Allege that the Producers' Agreement was Actually
            Breached…………………………………………………………………………13

            2.      Plaintiff has Failed to Identify Other Third-Party Contracts that were
            Breached or Potential Customers that Were Lost ................................................. 14

    B.      Plaintiff Failed to Sufficiently Allege Knowledge or  Intentional Procurement of
    an Alleged Breach ................................................................................................... 16

C.  Plaintiff has Also Failed to Allege Wrongful Means Without Justification or Unlawful Conduct ................................................................................................. 16

III. PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE A CLAIM FOR FRAUD AGAINST DAVID SHARA AND TSITOGHDZYAN ........................................................ 18

A.  Plaintiff Failed to Plead Specific Factual Representations that Were False ........ 19

B.  Plaintiff Has Also Failed to Plead Factual Matter to Raise A Plausible Inference of Intent  20

C.  Plaintiff also Fails to Sufficiently Plead Justifiable Reliance .............................. 20

D.  Plaintiff's Fraud Claim is Barred by the Statue of Frauds ................................... 21

IV. PLAINTIFF'S FRAUD AND ESTOPPEL CLAIMS ARE DUPLICATIVE ....................... 21

V.  PLAINTIFF ALSO FAILED TO SUFFICIENTLY ALLEGE PROMISSORY ESTOPPEL AGAINST SARANDON AND TSITOGHDZYAN .......................................... 22

VI. PLAINTIFF FAILED TO SUFFICIENTLY ESTABLISH THE CIVIL CONSPIRACY CLAIM AGAINST DEFENDANTS SARANDON, TSITOGHDZYAN OR HONEY SHARA .............................................................................. 24

CONCLUSION ........................................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ace Arts, LLC v. Sony/ATV Music Pub., LLC*,
  56 F. Supp. 3d 436 (S.D.N.Y. 2014)......................................................................... 14

*Adler & Shaykin v. Wachner*,
  721 F.Supp. 472 (S.D.N.Y. 1988) ............................................................................ 12

*Alexander & Alexander of New York, Inc. v. Fritzen*,
  68 N.Y.2d 968 (1986)............................................................................................... 25

*Alvarado v. Mount Pleasant Cottage Sch. Dist.*,
  404 F.Supp.3d 763 (S.D.N.Y. 2019)........................................................................ 15

*Amusement Indus., Inc. v. Stern*,
  786 F. Supp. 2d 758 (S.D.N.Y. 2011)...................................................................... 22

*Ashcroft v Iqbal*,
  556 U.S. 662 (2009).............................................................................................. 4, 5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007)......................................................................................... 4

*Ball v. Grady*,
  267 N.Y. 470 (1935) ................................................................................................. 12

*Banner v. Lyon & Healy, Inc.*,
  249 AD 569, *affd*, 277 N.Y. 570 (1938) ................................................................. 20

*Battery Steamship Corp. v. Refineria Panama, S.A.*,
  513 F.2d 735 ............................................................................................................. 12

*Belfert v. Peoples Planning Corp. of Am.*,
  202 N.Y.S.2d 101 (1st Dept. 1960) ................................................................... 10, 12

*Bell Atl. Corp. v Twombly*,
  550 U.S. 544 (2007)................................................................................................... 4

*Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*,
  447 F.Supp.2d 329 (S.D.N.Y. 2006)........................................................................ 13

*Bigio v. Coca-Cola Co.*,
  675 F.3d 163 (2d Cir. 2012) ........................................................................................... 25

*Bonady Apartments v. Columbia Banking Fed. Sav. & Lo*an Ass'n,
  465 N.Y.S.2d 150 (N.Y.Sup.Ct.198*3), aff'd as modified in non-relevant* part, 472 N.Y.S.2d
  221 (4th Dept. 1984) ........................................................................................................ 8

*Braten v. Bankers Trust Co.*,
  60 N.Y.2d 155 (1983) ..................................................................................................... 12

*Brinkley v. Casablancas*,
  80 A.D.2d 428 (1st Dept. 1981) ..................................................................................... 24

*Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*,
  620 N.Y.S.2d 196 (4th Dept. 1994) ............................................................................... 23

*Broder v. Cablevision Sys. Corp.*,
  418 F.3d 187 (2d Cir. 2005) ............................................................................................. 8

*Burrowes v. Combs*,
  25 A.D.3d 370, 808 N.Y.S.2d 50 (1st Dept. 2006) ....................................................... 17

*Carvel Corp. v. Noonan*,
  3 N.Y.3d 182 (2004) ....................................................................................................... 18

*City of Yonkers v. Otis Elevator Co.*,
  649 F. Supp. 716 (S.D.N.Y. 1986), *aff'd*, 844 F.2d 42 (2d Cir. 1988) ...................... 10

*Co*hen *v* Brunswick Record Corp.,
  31 Misc 2d 525 (Sup. Ct. 1961) ..................................................................................... 15

*Computech Intern., Inc. v. Compaq Computer Corp.*,
  2002 WL 31398933 (S.D.N.Y. Oct. 24, 2002) .............................................................. 11

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*,
  546 F. Supp. 3d 204 (W.D.N.Y. 2021) ................................................................ 15, 16, 17

*D & N Boening, Inc. v. Kirsch Beverages, Inc.*,
  63 N.Y.2d 449 (1984) ..................................................................................................... 10

*Davantzis v. PaineWebber Inc.*,
  2001 WL 1423519 (N.Y. Sup. Ct. July 23, 2001) ........................................................... 6

*Dietrich v. U.S. Shipping Bd. Emergency Fleet Corp.*,
  9 F.2d 733 (2d Cir. 1925) ............................................................................................... 15

*DiFolco v MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) .......................................................................... 5, 18

*Dress Shirt Sales v. Hotel Martinique Assoc.*,
    12 N.Y.2d 339 (1963) ..................................................................................... 9

*Eighmie v. Taylor*,
    98 N.Y. 288 (1885) ........................................................................................ 12

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011) ........................................................ 5, 6

*Felicie, Inc. v. Leibovitz*,
    67 A.D.2d 656 (1st Dept. 1979) .................................................................. 24

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
    2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019) ............................................ 6

*Fleissler v. Bayroff*,
    266 A.D.2d 34 (1st Dept. 1998) .................................................................. 6

*Four Finger Art Factory, Inc. v. Dinicola*,
    No. 2000 WL 145466 (S.D.N.Y. 2000) ..................................................... 23

*Frontier- Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
    *LLC*, 224 F. Supp. 2d 520 (W.D.N.Y. 2002) ............................................ 23

*Goldman v. Strough Real Estate, Inc.*,
    770 N.Y.S.2d 94 (2d Dept. 2003) ............................................................... 20

*Granite Partners, L.P. v. Bear Stearns & Co. Inc.*,
    17 F.Supp.2d 275 (S.D.N.Y. 1998) ............................................................ 8

*Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*,
    428 N.Y.S.2d 628 (1980) ............................................................................. 18

*Gutkowski v. Steinbrenner*,
    680 F. Supp. 2d 602 (S.D.N.Y. 2010) ....................................................... 11

*Guzzo v. Easterntech Elecs., Inc.*,
    446 N.Y.S.2d 582 (3d Dept. 1982) ............................................................ 10

*Heinert v. Bank of Am. N.A.*,
    835 F. App'x 627 (2d Cir. 2020) ................................................................ 25

*Higgs v. De Maziroff*,
   263 N.Y. 473 (1934) ............................................................................................ 12

*Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*,
   665 F.Supp.2d 239 (S.D.N.Y. *2009*) ................................................................... 25

*Hydro Investors, Inc. v. Trafalgar Power, Inc.*,
   227 F.3d 8 (2d Cir. 2000) .................................................................................... 22

*In re Basic Food Grp., LLC*,
   2018 WL 5805943 (Bankr. S.D.N.Y. Oct. 31, 2018) ........................................... 8

*In re Bayou Hedge Fund Litig.*,
   534 F. Supp. 2d 405 (S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp.
   LLC*, 573 F.3d 98 (2d Cir. 2009) ........................................................................ 11

*In re Livent Inc. Noteholders Sec. Litig.*,
   151 F.Supp.2d 371 (S.D.N.Y. 2001) ..................................................................... 5

*In Touch Concepts, Inc. v Cellco Partnership*,
   949 F Supp 2d 447 (S.D.N.Y. 201*3), adhered to on denial of reconsidera*tion, 2013 WL
   6182949 (S.D.N.Y 2013), affd, 788 *F*3d 98 (2d Cir. 2015) ................................ 16

*Investors Ins. Co.*,
   917 F.2d 100 (2d Cir. 1990) ................................................................................ 12

*JBCHoldings NY, LLC v Pakter*,
   931 F Supp 2d 514 (S.D.N.Y. 2013) .......................................................... 18, 19, 21

*JP Morgan Chase Bank v. Winnick*,
   350 F. Supp. 2d 393 (S.D.N.Y. 2004) ................................................................. 22

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
   97 F.3d 632 (2d Cir.1996) ..................................................................................... 6

*Kashi v. Gratsos*,
   790 F.2d 1050 (2d Cir. 1986) .............................................................................. 25

*Kid Car NY, LLC v. Kidmoto Techs. LLC*,
   518 F.Supp.3d 740, (S.D.N.Y. 2021) .................................................................. 16

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) .......................................................................... 14, 25

*Knopf v Phillips*,
   802 F. Appx 639 (2d Cir. 2020) .......................................................................... 13

*Kyusung Cho v. Youn Tae Yoo*,
  2010 WL 2469969, (N.Y. Sup. Ct. June 2, 2010).................................................. 23

*Ladouceur v. Credit Lyonnais*,
  159 F. App'x 302 (2d Cir. 2005) ........................................................................... 23

*Lanzi v Brooks*,
  54 AD2d 1057 (3d Dept. 1976), *affd,* 43 NY2d 778 (1977)................................. 20

*Learning Annex Holdings, LLC v. Gittelman*,
  48 A.D.3d 211, 850 N.Y.S.2d 422 (1st Dept. 2008).............................................. 16

*Lerner v. Fleet Bank*,
  459 F.3d 273 (2d Cir. 2006)................................................................................... 21

*Lesesne v. Brimecome*,
  918 F.Supp.2d 221 (S.D.N.Y. 2013)...................................................................... 16

*Lomax v New Broadcasting Co*.,
  18 A.D.2d 229 (1st Dept. 1963).............................................................................. 24

*M/A-COM Sec. Corp. v. Galesi*,
  904 F.2d 134 (2d Cir. 1990).................................................................................... 9

*Mallis v. Bankers Trust Co.*,
  615 F.2d 68 (2d Cir.1980)....................................................................................... 22

*Marino v. Grupo Mundial Tenedora, S.A.*,
  810 F. Supp. 2d 601 (S.D.N.Y. 2011)..................................................................... 25

*Matusovsky v. Merrill Lynch*,
  186 F.Supp.2d 397 (S.D.N.Y. 2002)...................................................................... 6, 8

*McCabe v. ConAgra Foods, Inc.*,
  681 F. App'x 82 (2d Cir. 2017) ............................................................................... 5

*Medtech Products Inc.*,
  596 F Supp 2d 778 (S.D.N.Y. 2008)....................................................................... 17

*Miller v Holtzbrinck Publishers, LLC*,
  2009 WL 528620 (S.D.N.Y. 2009), affd sub n*om., 377 Fed. A*ppx 72 (2d Cir. 2010) ........... 22

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*,
  87 N.Y.2d 614 (1996) .............................................................................................. 14

*Nesbitt v. Penalver,*
835 N.Y.S.2d 426 (2d Dept. 2007) ............................................................................ 10

*Northern Shipping Funds I, L.L.C. v. Icon Capital Corp. Eyeglasses,*
2013 WL 1500333 (S.D.N.Y. 2013) ........................................................................... 17

*Orange Cnty. Choppers, Inc. v. Olaes Enterprises, Inc.,*
497 F. Supp. 2d 541 (S.D.N.Y. 2007) ........................................................................ 18

*Perreca v. Gluck,*
295 F.3d 215 (2d Cir. 2002) ........................................................................................ 24

*Phoenix Capital Investments LLC v Ellington Mgt. Group, L.L.C.,*
51 AD3d 549 (1st Dept. 2008) ...................................................................................... 9

*Prince of Peace Enterprises, Inc. v. Top Quality Food* Mkt., LLC,
760 F. Supp. 2d 384 (S.D.N.Y. 201*1), adhered to on denial of reconsidera*tion, 2011 WL
650799 (S.D.N.Y. 2011) ............................................................................................. 13

*Raine* v *Lorimar Productions, Inc.,*
*71 BR* 450 (S.D.N.Y. 1987) ...................................................................................... 25

*Register.com, Inc. v. Verio, Inc.,*
356 F.3d 393 (2d Cir. 2004) ........................................................................................ 13

*RFP LLC v. SCVNGR, Inc.,*
788 F. Supp. 2d 191 (S.D.N.Y. 2011) ........................................................................ 19

*Rich v Fox News Network, LLC,*
939 F.3d 112 (2d Cir. 2019) ........................................................................................ 13

*Ritchie Capital Mgt., L.L.C. v Gen. Elec. Capital Corp.,*
121 F Supp 3d 321 (S.D.N.Y. 2015), *affd,* 821 F3d 349 (2d Cir. 2016) .................. 25

*RJE Corp. v. Northville Indus. Corp.,*
329 F.3d 310 (2d Cir. 2003) ........................................................................................ 12

*Ross v. FSG PrivatAir, Inc.,*
2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004) .............................................................. 6

*Schonholz v. Long Island Jewish Med. Ctr.,*
87 F.3d 72 (2d Cir.1996) ............................................................................................. 23

*Semple v. Eyeblaster, Inc.,*
2009 WL 1457163 (S.D.N.Y. 2009) .............................................................................. 9

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir.1994) ........................................................................................... 21

*Skyline Travel, Inc. v. Emirates*,
    2011 WL 1239783 (S.D.N.Y. 2011) (breaches cannot be described in conclusory terms), aff'd,
    476 F.App'x 480 (2d Cir. 2012) .................................................................................... 14

*Space Hunters v. United States*,
    500 Fed.Appx. 76 (2d Cir. 2012) .................................................................................. 21

*State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*,
    374 F.3d 158 (2d Cir. 2004) ........................................................................................... 8

*Stuart Silver Assoc., Inc. v Baco Dev. Corp.*,
    245 AD2d 96 (1st Dept. 1997) ...................................................................................... 22

*Teachers Ins. & Annuity Ass'n of America v. Wometco Enterprises*,
    833 F.Supp. 344 (S.D.N.Y. 1993) .................................................................................. 8

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001) ......................................................................................... 23

*Theophilopoulos v. Cantilli*,
    1989 WL 115861 (S.D.N.Y. 1989) ................................................................................ 19

*Thyroff v Nationwide Mut. Ins. Co.*,
    460 F3d 400 (2d Cir 2006) ............................................................................................. 9

*Todd v. Oppenheimer & Co.*,
    78 F.R.D. 415 (S.D.N.Y. 1978) .................................................................................... 20

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*,
    734 F. Supp. 2d 368 (S.D.N.Y. 2010) .......................................................................... 22

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013) ............................................................................ 5

*United Beer Distrib. Co., Inc. v. Hiram Walker (N.Y.) Inc.*,
    163 A.D.2d 79 (1st Dep't 1990) ................................................................................... 11

*Universal City Studios, Inc. v. Nintendo Co., Ltd.*,
    797 F.2d 70 (2d Cir.1986) ........................................................................................... 19

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
    455 F. App'x 102 (2d Cir. 2012) ...................................................................... 13, 14, 15

*Vigoda v. DCA Prods. Plus Inc.*,
    293 A.D.2d 265 (1st Dept. 2002)..................................................................... 16

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410 (2d Cir. 2006)......................................................................... 19

*Wolff v Rare Medium, Inc.*,
    210 F.Supp.2d 490 (S.D.N.Y. 2002), aff*d, 65* Fed Appx 736 (2d Cir. 2003) ........... 5, 8, 17, 18

*Zaitsec v. Solomon Bros., Inc.*,
    60 F.3d 1001 (2d Cir. 1995)......................................................................... 12

*Zeising v Kelly*,
    152 F Supp 2d 335 (S.D.N.Y. 2001)............................................................. 11, 22

**Statutes**

18 U.S.C. §2501-2521 ................................................................................... 19

N.Y. GEN. OBLIG. LAW § 5-701(a)(1).............................................................. 10, 24

NEW YORK CIVIL RIGHTS LAW § 50 ............................................................... 24

NEW YORK CIVIL RIGHTS LAW § 51 ............................................................... 24

**Rules**

N.Y. C.P.L.R. § 213(8) ................................................................................... 21

Defendants Susan Sarandon ("Sarandon"), David Shara ("Shara"), Honey Shara ("Honey Shara"), Tigran Tsitoghdzyan ("Tsitoghdzyan") (collectively "Defendants") submit this memorandum of law in support of their motion to dismiss Plaintiff Arthur Balder's ("Plaintiff" or "Balder") Second Amended Complaint ("SAC").[1] Plaintiff's SAC must be dismissed where as set forth below Plaintiff has utterly failed to allege facts that would state an plausible claim for relief. Plaintiff has no claims and has brought this lawsuit to harass and force Defendants into giving up their legal rights, which should not be countenanced by this Court.

## STATEMENT OF FACTS

Sometime prior to March of 2016,[2] Plaintiff alleges that he and David Shara agreed on making a documentary film entitled "American Mirror: Intimations of Immorality" (the "Film") based on painter and artist Tsitoghdzyan. SAC ¶¶1, 4, 5. Plaintiff claims an oral agreement that:

Tsitoghdzyan[3] would provide any written permissions that would be necessary in the future; (SAC ¶1)

that the Film would be distributed commercially after an initial film festival run, that the Film should be finished by mid-2017, (SAC ¶1)

that the David Shara would provide the necessary funds only after the Plaintiff presented budgets and the parties approved them; (SAC ¶1)

that the upfront compensation would be a painting made by Tsitoghdzyan in the style of the series "mirrors", which until then had always been portraits of faces of women. (SAC ¶1)[4]

David Shara promised to obtain the signed talent release of the people they were inviting, (SAC ¶3)

---

[1] The alleged facts in this section are drawn from the SAC, which with exhibits is annexed to the Declaration of Sarah M. Matz dated December 5, 2022 (the "Matz Decl.") as Exhibit 1. The paragraph numbers referenced herein are from the 73-page SAC. The inclusion of any of Plaintiff's allegations in this motion is not a concession of truth by Defendants.

[2] Plaintiff alleges that Sarandon was invited to participate in the Film in "[a]round March 2016." SAC ¶4.

[3] Notably, Tsitoghdzyan is not alleged to have been a party to this alleged oral agreement.

[4] Plaintiff alleges that the painting was going to be a "portrait in the style of the 'mirrors' series, of 100x75 inches, and that the woman portrayed would be the Plaintiff's wife." SAC ¶4.

(the "Alleged Oral Agreement"). Plaintiff alleges that he and Shara "left other details open for the signing of a contract memorializing all aspects of Distribution." *Id.* ¶1. Plaintiff alleges that he accepted of the painting as upfront compensation "because Tsitoghdzyan and David Shara made representations to the Plaintiff of the **enormous value** of Tsitoghdzyan's artworks, mainly based on the auctions results at Phillips Auctioneers LLC, NYC, in 2014 and 2015, **which were very high**." *Id.* ¶1 (emphasis added). Plaintiff alleges that in the following months he and Shara continued to negotiate a written agreement to memorialize the terms of their Alleged Oral Agreement. *Id.* ¶7. Plaintiff alleges that during these negotiations D. Shara wanted to "fire the Plaintiff, and stated that they wanted him to disappear from it," that Tsitoghdzyan allegedly "insulted" Plaintiff in emails and that David Shara had said that "all was finished" and wanted to get rid of him. *Id.* ¶¶7-8. In a series of self-serving, conclusory allegations Plaintiff also alleges that Shara "coerced" the Plaintiff to accept disadvantageous terms and said if the Plaintiff did not agree to certain terms he would "scrap the project." *Id.* ¶9.

Plaintiff alleges that on or around April 4, 2017, he and David Shara entered into the Producer's Agreement (the "Producer's Agreement"). *See* SAC, Ex. 1. With respect to the painting and Plaintiff's compensation, the Producer's Agreement provided as follows:

> compensation of [Plaintiff's] work in the [Film] started in April 2015, the [Plaintiff] will receive from [Shara] an original painting hand-made by artist Tigran Tsitoghdzyan. [Shara] agree[d] that it will be a panting of the series 'Mirrors' portraying [Plaintiff's] wife, Bella Jazmin de la Guia, no later than the last day of the month of May in the year 2017, and that **the painting will be 75x50 inch**.
>
> **[Plaintiff] agree[d] that he thereto renounces to any additional upfront compensation** calculated on the production budget of the film, but **[Plaintiff] will have 20% of profits, i.e., once final production budget recouped**.

*See* SAC, Ex. 1, p.1 (emphasis added). For payment for expenses, the agreement provides that:

> The final production budget will be the result of the sum of all production expenses that have taken place until date and also adding those that may take place until the

final termination of the film.

> **[Plaintiff] will provide and pay all additional Color Correction and Editing of the film and other parts of the film yet to be filmed without further production cost hereto,** and will provide any additional directorial and producer's work and scripts necessary to ensure the best result in such cases
>
> [Shara] agrees he will pay any additional costs to composer of original soundtrack, and [Plaintiff] will provide the composer any necessary files to ensure the optimal performance of his work.
>
> If any additional production costs would be necessary beyond what has been already done to date, i.e., renting camera equipment, cameras, or lenses, for any additional shootings, etc., **[Shara] would have to provide additional funds upon approval of new estimations and new budget**.

*Id.* (emphasis added). As to distribution, the Producer's Agreement stated that:

> [Plaintiff] will inform and discuss any **distribution possibilities** with [Shara], both being informed in due time to ensure the best performance possible of the business.
>
> **[Plaintiff] cannot make any decision regarding distribution without contacting and getting written confirmation by [Shara]**. Revenues have to be paid directly to [Shara], being distribution contracts always under his surveillance and executed according to his criteria.

*Id.* (emphasis added). Lastly, the Producer's Agreement provided that the parties "agree to the listed terms listed above signing all TWO pages of the agreement." The allegations of the parties' interactions and breakdown of their relationship are referenced in the relevant sections below.

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the Court must draw all reasonable inferences in Plaintiff's favor and must take as true the facts alleged in the plaintiff's complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal*, 556 U.S. 662, 663 (2009). Courts may not "accept as true a legal

3

conclusion couched as a factual allegation," and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 US at 678. "[A] formulaic recitation of the elements of a cause of action will not do … Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*

A court should not "accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleading rely, or by factors of which the court may take judicial notice." *In re Livent Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 405-406 (S.D.N.Y. 2001) (citations omitted); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."). "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal citations omitted).

## I. PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE A BREACH OF CONTRACT CLAIM AGAINST SHARA

### A. Plaintiff Failed to Plead Conduct that Allegedly Breaches the Producer's Agreement

The elements of a cause of action for breach of contract are: the existence of an agreement, performance by the plaintiff, breach of contract by the defendant, and resulting damage. *McCabe v. ConAgra Foods, Inc.,* 681 F. App'x 82, 84 (2d Cir. 2017). "[A] plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (*quoting Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354, 358 (S.D.N.Y.2001) (dismissing breach claim because plaintiffs failed to identify the contractual provisions that defendant breached)). "Stating in a

conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Id.* In determining obligations, "the initial interpretation of a contract is a matter of law for the court to decide." *Id.* (citing *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir.1996)). "[W]here there is no contractual obligation between two parties, there can be no breach of contract claim." *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2019 WL 1244294, at *13 (S.D.N.Y. Mar. 18, 2019) (citing *Fleissler v. Bayroff*, 266 A.D.2d 34, 34-46 (1st Dept. 1998); *Davantzis v. PaineWebber Inc.*, 2001 WL 1423519, at *3 (N.Y. Sup. Ct. July 23, 2001) (same and "when the essential elements of the contract are not specified, there can be no breach claim")).

The SAC is rife with allegations that Shara did not undertake actions that were actually obligations in Producer Agreement. *Flatiron Acquisition Vehicle, LLC*, 2019 WL 1244294, at *13 (citing *Ross v. FSG PrivatAir, Inc.*, 2004 WL 1837366, at *3-*5, *8 (S.D.N.Y. Aug. 17, 2004) (dismissing plaintiff's breach claim after determining that the alleged that defendants breached obligations that did not actually exist under the terms of the contract)). Allegations of obligations not in the Producer's Agreement are also properly disregarded because they are contradicted by the agreement. *Matusovsky v. Merrill Lynch,* 186 F.Supp.2d 397, 399-400 (S.D.N.Y. 2002).

Plaintiff's repeated allegation that David Shara failed to provide written talent releases (SAC ¶6, 45) cannot constitute a breach as there was no obligation for Shara to provide them in the Producer's Agreement. *See* Producer's Agreement. The allegations that Plaintiff was not given a 100x75 inch painting (SAC ¶10), also fails as the Producer's Agreement provided for a 75x50 inch painting.[5] *See* Producers' Agreement. Similarly, Plaintiff's allegations that the painting he received was of lower value and quantity than what was promised to him also do not

---

[5] Plaintiff's conclusory allegation that he was coerced to accept a downsize of the painting in order to sign the Producers' Agreement is conclusory and irrelevant where he acknowledges he agreed to accept it. SAC ¶¶6,10. Additionally, Plaintiff's allegation that the painting was late does not constitute a material breach nor has Plaintiff alleged damages associated with it.

support a claim for breach (SAC ¶10), as the Producer's Agreement did not specify those items. *See* Producers' Agreement. Plaintiff's allegations that Shara failed to pay various invoices for the Film (SAC ¶¶ 39, 45, 48), also fail to make out a plausible claim for breach. Plaintiff was responsible for most costs. *See* Producer's Agreement, p.1 (Plaintiff will "pay all additional Color Correction and Editing of the film and other parts of the film yet to be filmed without further production cost hereto"). Shara was only responsible if there was a new approved budget. As Plaintiff has failed to allege any factual content regarding what was contained in the invoices, or that they were part of an approved budget there is no plausible inference that Shara was responsible for them. Lastly, Plaintiff's allegations that Shara decided he did not want to engage in two future projects with Plaintiff about the biggest diamond ever mined in Canada and Nazi propaganda (SAC ¶24, 104), also fail as Shara had no obligation to so under the Producer's Agreement

Plaintiff's allegations that Shara breached an express obligation or his duty of good faith and fair dealing by cancelling the festivals, not providing consent to distribute the Film and/or not doing so by a particular date, are also insufficient to state a claim for breach.

This part of the claim is premised upon the false allegations that the Producer's Agreement "provides that the Plaintiff would **have authority over distribution** of the Film, subject only to receiving David Shara's written confirmation of distribution decisions." SAC ¶86. The Producer's Agreement does not give Plaintiff any such right. To the contrary, it provides he will inform and discuss with Shara any distribution possibilities and prohibits Plaintiff from making "**any decision regarding distribution without contacting and getting written confirmation by [Shara]**" and provides that "[r]evenues have to be paid directly to [Shara], **being distribution contracts always under his surveillance and executed according to his criteria**." *See* SAC, Ex. 1 (emphasis added). Plaintiff's allegations that contradict the written Producer's Agreement cannot be

considered. *Matusovsky,* 186 F.Supp.2d at 399-400. Not only does David Shara have the sole right to control distribution there is no deadline for distribution stated in the Producer's Agreement.[6]

Moreover, Shara's alleged withholding of consent does not constitute a breach of the duty of good faith and fair dealing. "The covenant of good faith and fair dealing does not create obligations beyond those expressly set forth in the contract." *In re Basic Food Grp., LLC*, 2018 WL 5805943, at *9 (Bankr. S.D.N.Y. Oct. 31, 2018) (*citing Granite Partners, L.P. v. Bear Stearns & Co. Inc.*, 17 F.Supp.2d 275, 306 (S.D.N.Y. 1998) ("the duty cannot be used to create independent obligations beyond those agreed upon and stated in the express language of the contract.")); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99 (2d Cir. 2005) ("It does not add to the contract a substantive provision not included by the parties."); *Wolff v Rare Medium, Inc.*, 210 F.Supp.2d 490, 497 (S.D.N.Y. 2002), *affd,* 65 Fed Appx 736 (2d Cir. 2003) (same).

The law is clear that in instances like here, where Plaintiff has agreed to obtain the other party's consent as a condition to proceeding and the contract sets no express restrictions on the right to withhold consent, the consent may be withheld arbitrarily for any reason or no reason and implying a different duty is inconsistent with the express terms of the contract. *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004) (*citing Bonady Apartments v. Columbia Banking Fed. Sav. & Loan Ass'n,* 465 N.Y.S.2d 150, 154 (N.Y.Sup.Ct.1983), *aff'd as modified in non-relevant part*, 472 N.Y.S.2d 221 (4th Dept. 1984); *Teachers Ins. & Annuity Ass'n of America v. Wometco Enterprises*, 833 F.Supp. 344, 349 (S.D.N.Y. 1993) ("[I]n the absence of explicit contractual language stating that a party may not unreasonably withhold consent, parties may withhold consent for any reason or no reason, and ...

---

[6] Alleged press releases that the film would be distributed "at a later date" (SAC ¶11) and emails of encouragement as to progress (*id.* ¶13) do not change the Producer's Agreement, waive the requirement that Plaintiff obtain Shara's consent or constitute that consent.

no implied obligation to act in good faith exists to limit that choice."); *Dress Shirt Sales v. Hotel Martinique Assoc.*, 12 N.Y.2d 339, 342 (1963) (unless contract provides that "consent shall not be unreasonably withheld," the agreement permits party to refuse consent "arbitrarily for any reason or no reason.")). *See also Semple v. Eyeblaster, Inc.*, 2009 WL 1457163, at *7 (S.D.N.Y. 2009) (granting a motion to dismiss in a claim for implied breach for refusal to grant consent for sale of restricted shares, it was held that the duty that plaintiff claimed was implied was inconsistent with express terms which required plaintiff to "obtain consent before entering into any agreement to sell her shares—and was not an obligation that was intended by the parties").

That the "decision not to grant consent may have 'incidentally lessen[ed] [Plaintiff]'s anticipated fruits from the contract,'" is not a breach of the implied covenant.  *Semple*, 2009 WL 1457163, at *7 (*citing Thyroff v Nationwide Mut. Ins. Co.*, 460 F3d 400, 408 (2d Cir 2006), *certified question accepted,* 7 NY3d 837 (2006), and *certified question answered,* 8 NY3d 283 (2007), *certified question accepted,* 7 NY3d 837 (2006), and *certified question answered,* 8 N.Y.3d 283 (2007)).  *See also M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (the implied covenant does not extend to undermine a party's right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits).  To hold otherwise "would unjustifiably frustrate the expectations of the parties as made explicit in the contract" and would violate "the well-established principle that the implied covenant of good faith and fair dealing will be enforced only to the extent it is consistent with the provisions of the contract."  *Phoenix Capital Investments LLC v Ellington Mgt. Group, L.L.C.*, 51 AD3d 549 (1st Dept. 2008).

The Producer's Agreement does not contain any restrictions on withholding consent and Plaintiff's cannot create an implied duty that is inconsistent with the agreement.  Even if an implied duty existed, the allegations (i) that Shara would not provide written consent for a distribution

agreement without all appropriate written permissions, which could lead to claims for copyright infringement[7] and violation of §§50 and 51; (ii) voiced his concerns over Plaintiff's unacceptable and rude communications with third parties; (iii) encouraged Plaintiff to apologize to Sarandon and be nice after the wildly unprofessional email Plaintiff sent to her and Tsitoghdzyan (SAC ¶¶33-36); and (iv) allegedly tried to enter into a modified agreement (*id.* ¶¶10, 55),[8] which Plaintiff alleges he never agreed to (*id.* ¶60), so that Sarandon and Tsitoghdzyan would provide appearance releases that were needed, could not raise a plausible inference of a breach of such an implied duty.

**B. Alleged Discussions Outside the Producer's Agreement are not Enforceable**

1. The Alleged Oral Agreement is Barred by the Statute of Frauds

The Statute of Frauds requires an agreement to be in writing, and signed by the party to be charged, if it cannot be performed within one year from the date of its making. *See* N.Y. GEN. OBLIG. LAW § 5-701(a)(1); *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 455-58 (1984); *Belfert v. Peoples Planning Corp. of Am.*, 202 N.Y.S.2d 101, 101 (1st Dept. 1960); *City of Yonkers v. Otis Elevator Co.*, 649 F. Supp. 716, 726 (S.D.N.Y. 1986), *aff'd*, 844 F.2d 42 (2d Cir. 1988). When an agreement falls within the statute of frauds and is not memorialized in writing – the agreement is void and unenforceable. *See D & N Boening, Inc.*, 63 N.Y.2d at 458; *Belfert*, 202 N.Y.S.2d at 101. For a writing to satisfy the Statute of Frauds, in addition to being signed by the party to be charged, it "must designate the parties, identify and describe the subject matter and state all the essential and material terms of the agreement." *Guzzo v. Easterntech Elecs., Inc.*, 446 N.Y.S.2d 582, 583 (3d Dept. 1982); *Nesbitt v. Penalver*, 835 N.Y.S.2d 426, 428 (2d Dept. 2007).

The purpose of the Statute of Frauds is "to protect people from alleged contractual

---

[7] Plaintiff has alleged that Phillips Auctioneers prohibited use of their footage in the Film. SAC ¶58.
[8] These communications which were clearly intended to resolve a dispute are also likely barred under FRE § 408. Additionally, it is not a change for Shara to be in control of the distribution (SAC ¶¶53-56) as he already had the right to withhold consent and control the terms.

9

obligations not supported by written evidence." *Zeising v Kelly*, 152 F Supp 2d 335, 343 (S.D.N.Y. 2001). As such, consideration of the Statute of Frauds "is appropriate on a motion to dismiss, as such a motion is intended to weed out meritless claims." *Zeising*, 152 F Supp 2d at 343. Courts consistently dismiss breach of contract claims under motions to dismiss based on the statute of frauds. *See Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 613 (S.D.N.Y. 2010).

The Alleged Oral Agreement clearly falls within the Statute of Frauds as it was intended to last longer than a year. According to Plaintiff the Alleged Oral Agreement was made prior to March 2016, when Susan Sarandon was approached.[9] SAC ¶¶1, 4. Under the Alleged Oral Agreement the Film would be finished by "mid-2017" and sometime thereafter would be "distributed commercially after an initial film festival run" (*id.* ¶1). Early 2016 to well past mid-2017 and with ongoing payments[10] from any distribution contract after expenses were recouped, clearly contemplates that the relationship would last longer than a year, and thus is within the statue of frauds. However, Plaintiff has failed to allege any writing that contains all of the material terms of the Alleged Oral Agreement signed by Shara, the party being charged. While the Producer's Agreement contains some of the terms, it does not contain them all, including that "Tsitoghdzyan[11] would provide any written permissions that would be necessary in the future" (*id.* ¶1) and that "David Shara promised to obtain the signed talent release of the people" they invited (*id.* ¶3). As such, the Court cannot enforce terms that are not in the Producer's Agreement.[12]

---

[9] The written Producer's Agreement states that the work on the Film started in 2015. SAC, Ex. 1, p1. Plaintiff has also clearly alleged that a documentary like this should take "two years for its production and film festival run" (SAC ¶113) with distribution following that.

[10] Contracts of indefinite duration are also deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 419 (S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir. 2009) (*citing Computech Intern., Inc. v. Compaq Computer Corp.*, 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002); *United Beer Distrib. Co., Inc. v. Hiram Walker (N.Y.) Inc.*, 163 A.D.2d 79 (1st Dep't 1990)).

[11] Notably, Tsitoghdzyan is not alleged to have been a party to this alleged oral agreement.

[12] To the extent Plaintiff were trying to enforce them, the alleged oral agreements for an indefinite performance

2. <u>Allegations of Prior Conversations are also Barred by the Parole Evidence Rule</u>

"[A] contract which appears complete on its face is an integrated agreement as a matter of law." *Battery Steamship Corp. v. Refineria Panama, S.A.,* 513 F.2d 735, 738 n. 3 (2d Cir.1975) (*citing Higgs v. De Maziroff,* 263 N.Y. 473, 478 (1934)); *see Raine v Paramount Pictures Corp.*1998 WL 655545, at *16 n. 12 (S.D.N.Y.1998). An integrated contract is one which "represents the entire understanding of the parties to the transaction." *Investors Ins. Co.,* 917 F.2d 100, 104 (2d. Cir. 19. If the written document "'appears to contain the engagements of the parties, and to define the object and measure the extent of such engagement, [then] it constitutes the contract between them, and is presumed to contain the whole of that contract.'" *Adler & Shaykin v. Wachner,* 721 F.Supp. 472, 476–77 (S.D.N.Y. 1988) (*quoting Eighmie v. Taylor,* 98 N.Y. 288 (1885)). "[T]he court must determine whether or not there is an integration 'by reading the writing in the light of surrounding circumstances, and by determining whether or not the [other] agreement was one which the parties would ordinarily be expected to embody in the writing.'" *Braten v. Bankers Trust Co.,* 60 N.Y.2d 155, 162 (1983) (quoting *Ball v. Grady,* 267 N.Y. 470, 472 (1935)). Where a "contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.,* 329 F.3d 310, 314 (2d Cir. 2003) (citations omitted).

The Producer's Agreement includes clear integration language directly prior to the signatory lines that "the producers agree to the listed terms listed above signing TWO pages of the agreement." *See* Producers' Agreement, p.2. The parties intended the Producer's Agreement that

---

concerning the other two projects the parties allegedly discussed (*id.* ¶24), which Plaintiff's implies were similar two-year projects and which Shara could not terminate at all, also violate the statute of frauds. *See Belfert,* 202 N.Y.S.2d at 101 ("The oral options exercisable by the [plaintiff] alone constitute the contract was one not performable within a year."); *Zaitsec v. Solomon Bros., Inc.,* 60 F.3d 1001, 1003 (2d Cir. 1995) ("if performance within one year depends upon an act solely within the control of the party seeking to enforce the oral agreement, the Statute of Frauds remains applicable.").

consists of two pages to include all of the terms of their agreement, and as such, extrinsic evidence of other alleged oral conversations, including those about written releases and the value and/or quality of the painting cannot be considered.

    3.  Alleged Discussions About the Two Future Potential Projects are Not Enforceable

    Existence of a contract requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Prince of Peace Enterprises, Inc. v. Top Quality Food Mkt., LLC*, 760 F. Supp. 2d 384, 397 (S.D.N.Y. 2011), *adhered to on denial of reconsideration*, 2011 WL 650799 (S.D.N.Y. 2011) (*citing Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.,* 447 F.Supp.2d 329, 337 (S.D.N.Y. 2006)). Mutual assent requires "a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, there is no contract." *Id.* Under New York law, "[m]utual assent is essential to the formation of a contract…" *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). Plaintiff's SAC is devoid of any allegations that Plaintiff and Shara came to any meeting of the mind concerning the two future projects. Plaintiff's only allegation is that Shara said he was finding sponsors, however Plaintiff has not alleged an offer, acceptance, consideration for Shara or any meeting of the minds. As such, there could be no enforceable agreement with respect to those projects.

## II.    PLAINTIFF HAS ALSO FAILED TO SUFFICIENTLY ALLEGE CLAIMS FOR TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS AGAINST SARANDON, HONEY SHARA AND TSITOGHDZYAN

    Under New York law, "[t]ortious interference with contract requires the (1) existence of a valid contract between the plaintiff and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the third-party's breach of the contract without justification, (4) actual breach of the contract, and damages resulting therefrom." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.,* 455 F. App'x 102, 104 (2d Cir. 2012); *See also Rich v Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019); *Knopf v Phillips*, 802 F.

Appx 639, 642 (2d Cir. 2020).  To state a claim for tortious interference with business relations, a plaintiff must adequately allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Valley Lane Indus. Co.*, 455 F. App'x at 105.

### A. Plaintiff has Failed to Plausibly Allege Breach of an Identified Agreement

1. Plaintiff Failed to Allege that the Producers' Agreement was Actually Breached

A plaintiff cannot prevail on an intentional interference claim unless it demonstrates an actual breach of the specified contract. *See NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 620-21 (1996); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (affirming dismissal of a tortious interference with contract claim on the basis that "plaintiffs fail[ed] to allege ... actual breach" of a contract where the alleged acts did "not amount to an allegation that [the contracting party] violated the terms of a contract"); *Skyline Travel, Inc. v. Emirates*, 2011 WL 1239783, at *5 (S.D.N.Y. 2011) (breaches cannot be described in conclusory terms), *aff'd*, 476 F.App'x 480 (2d Cir. 2012).

As set forth in Section I(A), Plaintiff has failed to allege conduct that resulted in an actual breach of the Producer Agreement.  That is especially true where none of the outcomes would constitute a breach and Plaintiff has not identified the particular provisions that were breached. *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 450–51 (S.D.N.Y. 2014) (pleading that in "a conclusory manner that an agreement was breached" is not enough and holding that cancelling premiere after plaintiff's failed to produce written confirmation of right to use songs, did not constitute a breach, because it left open the possibility of lawful termination). Allegations that they caused Shara to walk away also do not constitute a breach.  *Kirch*, 449 F3d at 402 (allegation that third party "walked away" from project was insufficient to satisfy breach).

13

Shara had the right to undertake the actions he allegedly took, and as such there was no breach.

Additionally, the allegations that Sarandon and Tsitoghdzyan did not provide written name and likeness releases, that Sarandon did not engage with press for the film, that Honey Shara[13] did not pay invoices for David Shara, and that she asked Plaintiff to send a copy of the Film to Tsitoghdzyan or ask for financial information (SAC ¶¶5, 7-8, 32, 48, 56) also cannot support this claim where they were not breaches of the Producer's Agreement. The allegations that the other two projects were cancelled (*id.* ¶3) are also not breaches as there was no enforceable agreement requiring or prohibiting them. *Cohen v Brunswick Record Corp.*, 31 Misc 2d 525, 527 (Sup. Ct. 1961) (exercise of a legal right to terminate an agreement cannot be the subject of an action against a third party for procuring such alleged breach). For this reason alone, this claim fails.

2. Plaintiff has Failed to Identify Other Third-Party Contracts that were Breached or Potential Customers that Were Lost

To state a claim for tortious interference with contract, a "plaintiff must identify the specific third-party contract with which the defendant allegedly interfered." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 211 (W.D.N.Y. 2021); *Valley Lane Industries Co.*, 455 Fed Appx at 104. Further, it is not enough to describe the contract in general terms, though; "[i]t is imperative that, in bringing a tortious interference claim, a plaintiff identify 'the relevant terms of the contract [] that existed' that were breached by defendant." *Corning Inc.*, 546 F. Supp. 3d at 211; *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F.Supp.3d 763, 791 (S.D.N.Y. 2019).

To assert a cause of action for interference with prospective economic advantage tortious

---

[13] Given the allegations in the SAC regarding Honey Shara being a "partner of David Shara" (SAC ¶¶7, 8), Honey Shara also cannot be liable as an alleged agent of a disclosed principal. *See Dietrich v. U.S. Shipping Bd. Emergency Fleet Corp.*, 9 F.2d 733, 739 (2d Cir. 1925) ("Where the principal is disclosed, and the agent is known to be acting as such, the latter cannot be made personally liable, unless he agreed to be so.").

interference, the plaintiff must "identify the potential customers at issue..." *Corning Incorporated*, 546 F Supp 3d at 216 (*citing Lesesne v. Brimecome*, 918 F.Supp.2d 221, 227 (S.D.N.Y. 2013); *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F.Supp.3d 740, 762, (S.D.N.Y. 2021) (failing "to identify a specific business relationship, its claim for tortious interference with prospective business advantage cannot survive a motion to dismiss"). Similarly, a plaintiff must identify any particular prospective [contract] it would have obtained or any existing [contract] that would have expanded but for defendants' conduct. *In Touch Concepts, Inc. v Cellco Partnership*, 949 F Supp 2d 447, 478 (S.D.N.Y. 2013), *adhered to on denial of reconsideration*, 2013 WL 6182949 (S.D.N.Y 2013), *affd*, 788 F3d 98 (2d Cir. 2015) (*citing Learning Annex Holdings, LLC v. Gittelman,* 48 A.D.3d 211, 211, 850 N.Y.S.2d 422 (1st Dept. 2008) (claim was not viable since plaintiff failed to identify any specific customers it would have obtained but for defendant's actions)); *Vigoda v. DCA Prods. Plus Inc.,* 293 A.D.2d 265, 267 (1st Dept. 2002) (failure to name "parties to any specific contract they would have obtained had they performed at the…showcase, they have failed to satisfy the 'but for' causation required").

Outside of the Producer's Agreement, Plaintiff has not alleged any specific valid contract or its specific terms, that Honey Shara, Sarandon or Tsitoghdzyan induced the breach of. Similarly, Plaintiff failed to specifically allege customers that were lost or facts identifying a plausible continuing business or other customary relationship not amounting to a formal contract that was interfered with. Plaintiff's conclusory allegations that there were several bids from "important distributors,"[14] that defendants interfered with his "other professional endeavors" or that he could not raise money for the Francis Bacon project (SAC ¶55, 65, 95) are insufficient to

_____

[14] The one potential contract Plaintiff identifies i.e., that MAF was ready to take the Film to "all sorts of distribution channels" (SAC ¶44), is conclusory and insufficient as Plaintiff has failed to plead facts to support that the opportunity was real and failed to plead but for causation. Moreover, it was not a breach for Shara to withhold consent for distribution. *See* Point I(A) *supra.*

state a plausible claim.   As such, these claims fail.

**B. <u>Plaintiff Failed to Sufficiently Allege <mark>Knowledge or  Intentional Procurement</mark> of an Alleged Breach</u>**

"[G]eneral claim of [a defendant's] knowledge of the contracts" insufficient to show that defendant "was aware of the limitations [the contracts] imposed." *Medtech Products Inc.,* 596 F Supp 2d 778 at 813 (S.D.N.Y. 2008); *Wolff*, 171 F Supp 2d at 359.   "[T]o avoid dismissal of a tortious interference with contract claim a plaintiff must support his [] claim with more than mere speculation." *Burrowes v. Combs,* 25 A.D.3d 370, 373, 808 N.Y.S.2d 50 (1st Dept. 2006).  Plaintiff failed to allege facts to create a plausible inference that these defendants had knowledge of the Producers' Agreement or what terms were breached.  SAC ¶75.

Moreover, "[t]o satisfy the third element of the claim, intentional procurement of the breach, 'it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that the defendant's objective was to procure such a breach.'" *Corning Inc.*, 546 F.Supp.3d at 212-13 (internal citations omitted).  Although the defendant need not have acted out of malice, "the interference must be intentional and an interference that is merely an intrusion that is negligent or incident to some other lawful purpose is not enough." *Northern Shipping Funds I, L.L.C. v. Icon Capital Corp. Eyeglasses*, 2013 WL 1500333, at *4 (S.D.N.Y. 2013).

Plaintiff has also failed to sufficiently plead facts that create a plausible inference that the Defendants objective was to procure a breach of the Producers' Agreement.  Plaintiff's allegations that Sarandon and Tsitoghdzyan did not provide releases, that Sarandon sent David Shara the email that Plaintiff sent to her, or that Honey Shara did not pay invoices for David Shara (SAC ¶¶5, 7-8, 32, 48, 56), are not intentional acts with the objective or procuring a breach.

**C. <u>Plaintiff has Also Failed to Allege Wrongful Means Without Justification or Unlawful Conduct</u>**

Moreover, a plaintiff must allege that the "defendant used 'wrongful means' to induce the third party to breach the contract." *Orange Cnty. Choppers, Inc. v. Olaes Enterprises, Inc*., 497 F. Supp. 2d 541, 561–62 (S.D.N.Y. 2007) (*citing Wolff*, 210 F.Supp.2d at 499; *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp*., 428 N.Y.S.2d 628, 631–32 (1980)). "'Wrongful means' includes physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Id.*  Where a suit is based on interference with a nonbinding relationship, the plaintiff must show that defendant's conduct was not "lawful" but "more culpable." *JBCHoldings NY, LLC v Pakter,* 931 F Supp 2d 514, 535 (S.D.N.Y. 2013).  The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort. *Id.*  Conduct that is not criminal or tortious will generally be "lawful" and thus insufficiently "culpable" to create liability for interference with prospective contracts or other nonbinding economic relations. *Id.*, *citing Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190 (2004).

Plaintiff has utterly failed to plead any conduct that was wrongful or unlawful.  Sarandon and Tsitoghdzyan exercising a legal right to control their publicity rights, Sarandon not participating in marketing and saying she did not want to be and was not associated with the Film, and that Honey Shara did not pay invoices for her son David Shara (SAC ¶¶7-8, 28-32, 48) are not wrongful means or unlawful conduct.  Similarly, Sarandon forwarding Plaintiff's shockingly rude and unprofessional emails accusing Sarandon of having an affair with Tsitoghdzyan and impugning her and her body of work is also not unlawful conduct.[15]  Plaintiff's allegation that Sarandon allegedly "talked to them, threatened them with litigation," requested that the festival circuit be cancelled and that other projects be cancelled, and that the Producer's Agreement be

---

[15] The email incorporated by reference and quoted in ¶¶27-31 of the SAC is annexed to the Matz Decl., as Ex. 2.  This email may be properly considered on this motion. *DiFolco*, 622 F.3d at 111.

"modified" in some unnamed way (*id.* ¶32), is not wrongful means or unlawful conduct.[16] Sarandon had no obligation to work with Plaintiff or want to be associated with him and Plaintiff sent that email knowing that. Plaintiff's other conclusory allegations that (i) Sarandon did "all in her power to thwart the festival circuit" (*id.* ¶46), (ii) that Honey Shara acted in bad faith seeking to interfere with the distribution of the Film in collaboration with Sarandon and Tsitoghdzyan (*id.* ¶55); and (iii) that they acted with "malice" are mere conclusions. Plaintiff has failed to plead facts to push these allegations across the line of plausibility. Similarly, Sarandon forwarding emails that she lawfully received is not unlawful under 18 U.S.C. §2501-2521.[17] Based upon the foregoing, these claims should be dismissed.

## III. PLAINTIFF FAILED TO SUFFICIENTLY ALLEGE A CLAIM FOR FRAUD AGAINST DAVID SHARA AND TSITOGHDZYAN

"[F]raud … requires a showing that '(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *JBCHoldings NY, LLC*, 931 F Supp 2d at 532; *Wall v. CSX Transp., Inc*., 471 F.3d 410, 415–16 (2d Cir. 2006). Rule 9(b) requires that allegations of fraud particularize the approximate time and place of the allegedly false representation and describe with particularity the allegedly false representation and any allegedly fraudulent transaction, and how the particular ... transaction furthered the fraudulent scheme. *Theophilopoulos v. Cantilli,* 1989 WL 115861, at *2 (S.D.N.Y.

---

[16] Plaintiff has not pled conduct that would make threats of litigation a wrongful mean. The threat of litigation, is only a wrongful means if (1) "the [claimant] has no belief in the merit of the litigation" or, (2) "having some belief in the merit of the suit, [the claimant] nevertheless institutes or threatens to institute litigation in bad faith," intending only to harass the third parties and not to bring his claim to definitive adjudication." *RFP LLC v. SCVNGR, Inc*., 788 F. Supp. 2d 191, 197 (S.D.N.Y. 2011) (*citing Universal City Studios, Inc. v. Nintendo Co., Ltd*., 797 F.2d 70, 75 (2d Cir.1986)). Plaintiff has not pled any facts that would show that threats had no merit or were only for the purposes of harassment.
[17] 18 U.S.C. §2501-2521 governs illegally intercepted communications, not emails that were lawfully received by the intended recipient and then forwarded. Plaintiff's bald allegation that Shara also violated this section by cc-ing third parties is equally as specious. SAC ¶37.

1989); *Todd v. Oppenheimer & Co.*, 78 F.R.D. 415, 420 (S.D.N.Y. 1978).

Plaintiff has failed to plead fraud with particularity. With a couple of exceptions, Plaintiff has failed to allege the time, place, and description of the allegedly false misrepresentation, that any such representation was false, facts to support a plausible inference of intent to defraud, that Plaintiff justifiably relied on such representation or that he suffered damages.

### A. Plaintiff Failed to Plead Specific Factual Representations that Were False

Plaintiff's general allegations that David Shara and Tsitoghdzyan made false representations about the value of the painting are not sufficiently particular. SAC ¶¶1, 3, 50. Even the allegations that are arguable more specific do not suffice. Plaintiff alleges (i) receiving an email from Shara dated October 25, 2016 that he had sold Tsitoghdzyan's paintings for up to $200,000; (ii) receiving an email dated November 29, 2016 that "mirror paintings cost 150-200,000 dollars" (iii) Tsitoghdzyan allegedly writing at some point that they were "200k paintings;" (iv) the "promises and representations by [Shara] that the value of the painting would be much higher in just a few years; and (v) the paintings "potentially much higher value that it would reach after 2016." SAC ¶¶1, 3, 9-10, 50, 76. Plaintiff does not make factual allegations that the statements regarding the past or current values were actually false, nor are these specific enough to determine if defendants were even talking about comparable paintings.

Moreover, the allegations that Defendants speculated about what he thought might happen in the future, cannot support an action for fraud since it is not a statement of fact. *Lanzi v Brooks*, 54 AD2d 1057, 1058 (3d Dept. 1976), *affd,* 43 NY2d 778 (1977) (alleged statement that they would be higher in a few years, is not a statement of existing fact that is capable of fraud) (*citing Banner v. Lyon & Healy, Inc*., 249 AD 569, *affd*, 277 N.Y. 570 (1938)); *Goldman v. Strough Real Estate, Inc.,* 770 N.Y.S.2d 94, 95 (2d Dept. 2003) ("representation pertaining to the future development of the adjoining parcel did not amount to the perpetration of fraud).

Plaintiff's other allegations that auction records in 2014 or 2015 were a "fraud" orchestrated by Shara and Tsitoghdzyan in 2014 and 2015 (SAC ¶3, 49) is also insufficiently specific and barred by the 6-year statute of limitations on fraud. N.Y. C.P.L.R. § 213(8). Plaintiff's claim is literally based on nothing but rank speculation and conclusions, which do not satisfy 9(b) nor are they plausible.

### B. Plaintiff Has Also Failed to Plead Factual Matter to Raise A Plausible Inference of Intent

While intent may be alleged generally, "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *JBCHoldings NY, LLC*, 931 F Supp 2d at 532, *citing Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted)). Rather, plaintiffs must allege facts that give rise to "a strong inference of fraudulent intent." *Id.*, citing *Space Hunters v. United States*, 500 Fed.Appx. 76, 79 (2d Cir. 2012) (*quoting* S*hields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)). Plaintiff has failed to plead with specificity that Defendants intended to defraud Plaintiff as he did not allege facts that Defendants had motive and opportunity to commit or allege facts showing strong circumstantial evidence of conscious misdoing.

### C. Plaintiff also Fails to Sufficiently Plead Justifiable Reliance

As far back as early 2016 Plaintiff admits that part of his compensation would be the painting. SAC ¶¶1, 50. Therefore, allegations of representations that some mirror paintings were worth $200,000 or had high value that were made in in the fall of 2016, is insufficient to raise a plausible inference that Plaintiff justifiably relied on the alleged statements when accepting the consideration. That is especially true when Plaintiff has failed to plead anything about what size paintings were being referenced or whether they were comparable to what Plaintiff would receive.

Moreover, Plaintiff's admission that the Phillips' appraisals and auction results, that he

allegedly relied on were public i.e., they "were and are online to date" (SAC ¶9) further contradicts the conclusory allegation that reliance was justifiable. *Stuart Silver Assoc., Inc. v Baco Dev. Corp.*, 245 AD2d 96, 98-99 (1st Dept. 1997) (Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations).[18] Plaintiff alleges that the information he needed was publicly available, as such he has failed to plead this element.

### D.  Plaintiff's Fraud Claim is Barred by the Statue of Frauds

A plaintiff may not "circumvent the Statute of Frauds by 'simply dressing up a breach of contract claim" by alleging fraud. *Zeising*, 152 F Supp. 2d at 345 (citing cases). Where "the gravamen of Plaintiff's fraud claim is that [the defendant] did not fulfill her side of the agreement… Plaintiff's cause of action for fraudulent inducement sounds in breach of contract and constitutes and improper effort to circumvent the Statute of Frauds." *Miller v Holtzbrinck Publishers, LLC*, 2009 WL 528620, at *4 (S.D.N.Y. 2009), *affd sub nom.,* 377 Fed. Appx 72 (2d Cir. 2010). Plaintiff's transparent attempt to transform his claim for breach i.e., that he did not receive what he thinks he bargained for, sounds in breach of contract as the Producer's Agreement expressly provided the consideration Plaintiff would receive and did not ascribe value.

## IV.  PLAINTIFF'S FRAUD AND ESTOPPEL CLAIMS ARE DUPLICATIVE

The economic loss rule "prevent[s] the recovery of damages that are inappropriate because they actually lie in the nature of breach of contract as opposed to tort." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F. Supp. 2d 368, 378-85 (S.D.N.Y. 2010); *Hydro Investors,*

---

[18] *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 775 (S.D.N.Y. 2011) (motions to dismiss because of a failure to adequately plead reasonable reliance have concerned situations where a plaintiff failed to examine readily available information); *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004) (where plaintiff "has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations.") (*citing Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80–81 (2d Cir.1980)).

*Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 16 (2d Cir. 2000); *Bristol-Myers Squibb, Indus. Div. v. Delta Star, Inc.*, 620 N.Y.S.2d 196, 181 (4th Dept. 1994) ("The economic loss rule reflects the principle that ==damages arising from the failure of the bargained-for consideration to meet the expectations of the parties are recoverable in contract, not tort=="). ==Allegations of fraud in connection with a contract are not actionable "where a fraud claim arises out of the same facts as plaintiff's breach of contract claim,== with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties." *Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co., LLC*, 224 F. Supp. 2d 520, 527 (W.D.N.Y. 2002) (*quoting Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)). In such instances, "==the fraud claim is redundant, and plaintiff's sole remedy is for breach.==" *Id.*

Similarly, a ==claim for promissory estoppel is precluded where the plaintiffs "do not point to any promise separate and apart from the obligations under the contract" because promissory estoppel is "designed to provide a remedy in the absence of a contractual obligation.==" *Kyusung Cho v. Youn Tae Yoo*, 2010 WL 2469969, (N.Y. Sup. Ct. June 2, 2010); *Four Finger Art Factory, Inc. v. Dinicola*, No. 2000 WL 145466, *8 (S.D.N.Y. 2000). ==Plaintiff's fraud and estoppel claims are duplicative of what Plaintiff claims Shara was allegedly supposed to have done and/or given Plaintiff the alleged agreements. As such, these claims should be dismissed.==

## V.    PLAINTIFF ALSO FAILED TO SUFFICIENTLY ALLEGE PROMISSORY ESTOPPEL AGAINST SARANDON AND TSITOGHDZYAN

A plaintiff must show the four traditional elements of promissory estoppel: 1) ==a promise==; 2) ==reliance== on the promise; 3) an injury caused by reliance; and 4) an injustice if the promise is not enforced. *Ladoceur v. Credit Lyonnais,* 159 F. App'x 302, 303–04 (2d Cir. 2005). In addition, a plaintiff must ==show "extraordinary circumstances" justifying relief.== *Ladoceur*, 159 F. App'x at 303-04. *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78–79 (2d Cir.1996).

There must be more than simply oral evidence to support a plaintiff's promissory estoppel claim. *Perreca v. Gluck,* 295 F.3d 215, 225 (2d Cir. 2002). Plaintiff's SAC only contains conclusory allegations about Sarandon and Tsitoghdzyan failing to fulfill the oral promises to provide "any signed paperwork necessary." SAC ¶¶5, 7, 16, 29-30, 66. However these allegations of oral promises alone are insufficient. Reliance is not also plausible given the allegations that Plaintiff is an experienced filmmaker and knew written consent was required.

Indeed, such oral promises cannot be enforceable where section §51 of the New York Civil Rights Law affords all individuals, including Sarandon and Tsitoghdzyan, the right to control the use of their name, portrait, picture and voice sand prohibits use of same for advertising or "purposes of trade without the written consent first obtained." N.Y. Civil Rights Law §51. Courts routinely find that oral agreements are not sufficient for such a consent. *See Brinkley v. Casablancas*, 80 A.D.2d 428, 434 (1st Dept. 1981) ("Oral consent is not a defense") (*citing Lomax v New Broadcasting Co*., 18 A.D.2d 229 (1st Dept. 1963)); *Felicie, Inc. v. Leibovitz*, 67 A.D.2d 656, 657 (1st Dept. 1979) (lower court and Special term had dismissed oral agreement on the grounds that it ran afoul of the statute of frauds contained in *inter alia* "sections 50 and 51 of the Civil Rights Law; that the contract is consequently void; and that … being void, inducement of breach thereof is not actionable", only reversing for failure to plead statute of frauds as an affirmative defense). Plaintiff's promissory estoppel claim is nothing more than a transparent attempt to avoid the built-in statute of frauds in N.Y. Civil Rights Law §§50 and 51, and GOL 5-701(a)(1). Such an attempt contravenes public policy. That Sarandon participated in filming also is not enough to make this claim plausible. *Brinkley v. Casablancas,* 80 A.D.2d 428, 434 (1st Dep't 1981) ("it is well-established that consent to have a photograph taken does not equate with written consent to use for advertising or trade purposes, which consent is expressly required by the

right to privacy statute.")  Plaintiff has also failed to <mark>allege substantial injustice.</mark>  The only injustice would be if this Court allowed Plaintiff to contravene well settled policy requiring a written consent.

## VI.     PLAINTIFF FAILED TO SUFFICIENTLY ESTABLISH THE CIVIL CONSPIRACY CLAIM AGAINST DEFENDANTS SARANDON, TSITOGHDZYAN OR HONEY SHARA

In order to state a claim for common law <mark>conspiracy, plaintiffs must allege (1) a corrupt agreement; (2) an overt act in furtherance of that agreement; (3) the party's intentional participation in furthering the plan; and (4) resulting damages.</mark>  *Heinert v. Bank of Am. N.A.,* 835 F. App'x 627, 632 (2d Cir. 2020), citing *Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012).  <mark>Failure to recognize or prevent fraud does not constitute an overt act.</mark>  *See Ritchie Capital Mgt., L.L.C. v Gen. Elec. Capital Corp.*, 121 F Supp 3d 321, 339-40 (S.D.N.Y. 2015), *affd,* 821 F3d 349 (2d Cir. 2016).  Plaintiff has failed allege facts to create a plausible inference of these elements here.

Moreover, <mark>"New York does not recognize an independent tort of conspiracy."</mark>  *See Kirch*, 449 F3d at 401; *see also* A*lexander & Alexander of New York, Inc. v. Fritzen,* 68 N.Y.2d 968, 969 (1986); *Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.,* 665 F.Supp.2d 239, 256 (S.D.N.Y. 2009) (claim for "Conspiracy to Violate the Law" was properly dismissed for failure to state <mark>an underlying claim);</mark> *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 611 (S.D.N.Y. 2011).  As Plaintiff's other tort claims fail, so must Plaintiff's lone remaining civil conspiracy cause of action.  Even if the breach claim were to survive in some part, this claim must fail as <mark>there is no claim for conspiracy to breach a contract.</mark> *Raine v Lorimar Productions, Inc.*, 71 BR 450, 453-54 (S.D.N.Y. 1987) (It is well-established under New York law that <mark>no cause of action by a party to a contract will lie for conspiracy to breach the contract).</mark>

24

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's

Second Amended Complaint with prejudice, and for such other relief as is just and proper.

Dated: New York, New York         Respectfully submitted,
      December 5, 2022          ADELMAN MATZ P.C.

By:_____
   Sarah M. Matz, Esq.
   Gary Adelman, Esq.
1173A Second Avenue, Suite 153
New York, New York 10065
Tel: (646) 650-2207
Email: sarah@adelmanmatz.com
Email: g@adelmanmatz.com
*Attorneys for Plaintiff*